Peggy Hunt (Utah State Bar No. 6060)
Nathan S. Seim (Utah State Bar No. 12654)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com
         seim.nathan@dorsey.com

*Attorneys for Gil A. Miller, Chapter 11 Trustee*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | **Bankr. Case No. 09-22584** |
| | (Substantively Consolidated) |
| WATERFORD FUNDING, LLC *et al.*, | Chapter 11 |
| | The Honorable R. Kimball Mosier |
| Debtors. | |
| | **[FILED ELECTRONICALLY]** |

**[PROPOSED] CHAPTER 11 TRUSTEE'S PLAN OF LIQUIDATION
DATED AUGUST 2, 2011**

## TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND CONSTRUCTION OF TERMS ........................................... 1

ARTICLE II - CLASSIFICATION OF CLAIMS ........................................................ 8
    2.1    Classified Claims. ........................................................ 8
    2.2    Unclassified Claims. ...................................................... 9

ARTICLE III - VOTING ON, ACCEPTANCE, AND REJECTION OF THE PLAN ................. 9
    3.1    Voting Classes and Acceptance of Plan. ................................... 9
    3.2    Non-Voting Classes. ...................................................... 9
    3.3    Voting Rights of Holders of Disputed Claims................................ 10
    3.4    Nonconsensual Confirmation. ............................................... 10

ARTICLE IV - TREATMENT OF CLASSIFIED CLAIMS ........................................... 10
    4.1    Class 1 - Secured Claims. .................................................. 10
    4.2    Class 2 - Priority Unsecured Claims.......................................... 11
    4.3    Class 3 - General Unsecured Claims. ........................................ 11
    4.4    Class 4 - Victim Claims. ................................................... 11
    4.5    Class 5 - Membership Interests. ............................................ 12

ARTICLE V - TREATMENT OF UNCLASSIFIED CLAIMS ......................................... 12
    5.1    Non-Classification. ....................................................... 12
    5.2    Administrative Expense Claims. ............................................ 12
    5.3    Priority Tax Claims. ....................................................... 14

ARTICLE VI - IMPLEMENTATION OF THE PLAN ............................................... 14
    6.1    General................................................................... 14
    6.2    Administration of the Consolidated Estate by Trustee....................... 14
    6.3    Retention of Property of Consolidated Estate. .............................. 15
    6.4    Liquidation of Property and Distribution of Net Proceeds.................... 15
    6.5    Unfiled Victim Claim Compromise. ......................................... 15
    6.6    Restitution................................................................ 15
    6.7    Preservation of Causes of Action and Defenses.............................. 16
    6.8    Non-Discharge of Debtors and Injunction.................................... 16

ARTICLE VII - CLAIM OBJECTIONS AND DISTRIBUTION OF CONSIDERATION........ 18
    7.1    Objections to Claims. ..................................................... 18
    7.2    Disputed Claims. ......................................................... 18
    7.3    Estimation of Claims. ..................................................... 18
    7.4    Disputed Claims Reserve................................................... 19
    7.5    Method of Distributions Under the Plan. .................................... 19
    7.6    Unclaimed Funds.......................................................... 20

i

ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 21
    8.1       Executory Contracts and Unexpired Leases. ...................................................... 21
    8.2       Rejection Damage Claims And Contract Rejection Claim Bar Date. ................ 21

ARTICLE IX - CONDITIONS PRECEDENT TO EFFECTIVE DATE .................................. 22
    9.1       Conditions Precedent to Effectiveness. ............................................................. 22
    9.2       Waiver of Conditions. ........................................................................................ 22

ARTICLE X - RETENTION OF JURISDICTION .................................................................. 22

ARTICLE XI - MISCELLANEOUS ........................................................................................ 24
    11.1     Continuation of Injunctions or Stays Until Effective Date ............................... 24
    11.2     Notice of Effective Date. ................................................................................... 24
    11.3     Limitation of Liability. ...................................................................................... 24
    11.4     Execution of Documents and Corporate Action. ............................................... 25
    11.5     Default of Plan. .................................................................................................. 25
    11.6     Setoffs and No Waiver. ...................................................................................... 25
    11.7     Amendment or Modification of the Plan. ........................................................... 25
    11.8     Revocation or Withdrawal of the Plan. .............................................................. 26
    11.9     Severability. ....................................................................................................... 26
    11.10   Exhibits. ............................................................................................................. 26
    11.11   Binding Effect. ................................................................................................... 26
    11.12   Notices. .............................................................................................................. 27
    11.13   Governing Law. ................................................................................................. 27
    11.14   Post-Confirmation Administration - Fees, Reports, Final Decree. .................... 27
    11.15   Headings. ............................................................................................................ 27
    11.16   Inconsistency. .................................................................................................... 28

ARTICLE XII - REQUEST FOR CONFIRMATION .............................................................. 28

Gil A. Miller, the duly-appointed Chapter 11 Trustee in the above-captioned case ("Trustee"), hereby proposes the following plan of liquidation under Section 1121 of the Bankruptcy Code.

On March 20, 2009, Waterford Funding, LLC and Waterford Loan Fund, LLC commenced this Bankruptcy Case by filing voluntary petitions under Chapter 11 of the Bankruptcy Code.  The Trustee was appointed on January 6, 2011.  Sent to you in the same envelope as this document is the Disclosure Statement that has been approved by the Bankruptcy Court and that is provided to help you understand the Plan.  All holders of Claims are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.  The Disclosure Statement for the Plan contains a summary of the Plan and discusses the Debtors' history, assets and liabilities.  Reading the summary of the Plan contained in the Disclosure Statement, however, is not a substitute for reading the Plan.  As the provisions of the Plan control, all holders of Claims are encouraged to carefully read the Plan.  No solicitation materials, other than the Disclosure Statement, the Disclosure Statement Exhibits, any Exhibits attached to this Plan and the related materials transmitted with the Disclosure Statement or Plan have been approved by the Bankruptcy Court for use in soliciting acceptances or rejections to the Plan.

# ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of this Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Expense Claim" shall mean a Claim that is allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) fees and expenses of Professionals allowed pursuant to an Order of the Bankruptcy Court; and (b) all fees and charges assessed against the Consolidated Estate pursuant to 28 U.S.C. § 1930.

"Administrative Expense Claim Bar Date" shall have the meaning attributed to this phrase in Section 5.2(c) of the Plan.

"Allowed . . . Claim" shall mean:

(a)     a Claim as to which a timely proof of Claim has been filed by the Bar Date, including any and all amended claims filed in relation thereto, and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order either as a result of suit or by settlement agreement;

(b)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code to the extent allowed under Section 502(h) of the Bankruptcy Code;

(c)     a Claim allowed pursuant to a Final Order in the amount so ordered; or

(d)     any Claim expressly allowed under this Plan or pursuant to the Confirmation Order, including Allowed Unfiled Victim Claims scheduled on Disclosure Statement Exhibit G-2.

"Avoidance Actions" shall mean Causes of Action arising or held by the Consolidated Estate under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

"Bankruptcy Case" shall mean the above-captioned Chapter 11 case pending in the Bankruptcy Court, including the substantively consolidated Chapter 11 case of WLF filed under Bankr. Case No. 09-22583.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Utah in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. § 157, the unit of such District Court specified pursuant to 28 U.S.C. § 151.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

"Bar Date" shall mean: (i) July 20, 2009 with respect to a Claim against Consolidated Estate other than a Claim of a Governmental Unit, whether filed on the WF Claim Docket or the WLF Claim Docket; and (ii) September 16, 2009 with respect to a Claim of a Governmental Unit (including any District) against the Consolidated Estate, whether filed on the WF Claim Docket or the WLF Claim Docket.  For the sake of clarity, "Bar Date" does not include the Contract Rejection Bar Date, the Administrative Expense Claim Bar Date, the DIP Professional and Committee Bar Date, or the Professional Administrative Expense Claim Bar Date, which are separately defined herein.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Utah.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise, including, without limitation, Avoidance Actions.

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean those classes designated in Articles II and III of this Plan.

"Collateral" shall mean any property or interest in property of the Consolidated Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

"Committee" shall mean the Official Unsecured Creditors' Committee that was appointed in the Bankruptcy Case.

"Committee Professionals" shall mean those Professionals employed by the Committee.

"Committee Member" shall mean those Persons who were appointed as members of the Committee.

"Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Hearing" shall mean _____, 2011, or any date to which the Bankruptcy Court continues said date on the record without the need for further notice.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

"Consolidated Estate" shall mean the estate of the Debtors created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code on the Petition Date, including but not limited to, (i) as created as a result of the Consolidation Orders; and (ii) the property that is retained by the Trustee under the Plan as of, and after the Effective Date.

"Consolidation Orders" shall mean the Order Granting Motion for Substantive Consolidation of the Debtors' Affiliated Chapter 11 Cases entered by the Bankruptcy Court on October 1, 2009 [Docket No. 173] and the Order Granting Trustee's Motion to Substantively Consolidate Subsidiaries and Investment Recovery, LLC as of the Petition Date entered by the Bankruptcy Court on January 6, 2011 [Docket No. 1077].

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of Claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"Contract Rejection Claim Bar Date" shall have the meaning attributed to it in Section 8.2 of the Plan.

"Debtors" shall mean WF; WLF; IR; Waterford Candwich, LLC, a Utah limited liability company; Waterford Perdido, LLC, a Utah limited liability company; and Waterford Services, LLC, a Utah limited liability company.

"Debtor in Possession Professionals" shall mean those Professionals employed by the Debtors prior to the appointment of the Trustee to with the DIP Professional and Committee Bar Date applies.

"DIP Professional and Committee Bar Date" shall mean the date for filing applications for Administrative Expense Claims as set forth in the Order Granting Trustee's Motion Pursuant to 11 U.S.C. §§ 105(a), 327, 330 and 503 and Federal Rule of Bankruptcy Procedure 2016(a) to Establish and Set a Bar Date for (1) Professionals employed by the Debtors in Possession, (2) Professionals Employed by the Official Unsecured Creditors' Committee, and (3) Members of the Official Unsecured Creditors' Committee to File Final Applications for Allowance of Administrative Expenses [Docket No. 493].

"Disallowed . . . Claim" shall mean:

(a) a Claim that is listed in the Schedules as unliquidated, disputed or contingent for which no proof of Claim has been filed prior to the Bar Date;

(b) a Claim asserted in addition to or in an amount greater than the amount of the Allowed Unfiled Victim Claim listed on Disclosure Statement Exhibit G-2;

(c) a Claim disallowed allowed under Section 502(d) of the Bankruptcy Code; or

(d) a Claim asserted in an amount greater than an amount fixed pursuant to a Final Order or pursuant to a settlement agreement entered into with the Trustee.

4

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all Exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disclosure Statement Exhibit" shall mean the Exhibits attached to the Disclosure Statement which are incorporated in the Disclosure Statement and this Plan by reference.

"Disputed . . . Claim" shall mean:

(a)     a claim that is listed in the Schedules as unliquidated, disputed or contingent;

(b)     if a proof of Claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Trustee in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order;

(c)     other than Victims Claims, Claims for which a proof of Claim has not been filed prior to any applicable Bar Date; or

(d)     a Claim which is a Contingent or Unliquidated Claim.

"Disputed Claims Reserve" shall have the meaning set forth in Section 6.4 hereof.

"Distribution Record Date" shall mean the Confirmation Date.

"Effective Date" shall mean the date which is 30 days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan have not been satisfied or waived, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

"Fee Procedures Order" shall mean that certain Order Establishing Monthly Fee and Expense Reimbursement Procedures entered by the Bankruptcy Court on March 9, 2010 [Docket No. 303].

"Final Decree" shall mean a Final Order of the Court closing the Bankruptcy Case.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, reargument or certiorari of the order has been sought, the order has been affirmed or the request for review, reargument or certiorari has been denied and the time to seek a further appeal, review, reargument or certiorari has expired, and as a result of which such order shall have become final and nonappealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil

5

Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim, a Claim that is entitled to priority of payment under Section 507 of the Bankruptcy Code, or a Victim Claim.

"Governmental Unit" shall have the meaning attributed to it in Section 101(27) of the Bankruptcy Code.

"Initial Distribution Date" shall mean any date that the Trustee chooses, in the Trustee's sole discretion, prior to December 31, 2011.

"IR" shall mean Investment Recovery, LC, a Utah limited liability company.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Section 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

"Membership Interest" shall mean any membership interest in any of the Debtors, regardless of form, arising under any contract, agreement, and/or under any applicable law.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, Governmental Unit or political subdivision thereof.

"Petition Date" shall mean March 20, 2009.

"Plan" shall mean this Plan of Liquidation, including, without limitation, the Disclosure Statement Exhibits and any Exhibits, supplements, appendices and schedules hereto, in their present form or as the same may be altered, amended or modified from time to time.

"Principal Investment" shall mean the total Cash remitted by a Waterford Investor to the Debtors or Wright.

"Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Priority Unsecured Claims" shall mean any Claim entitled to priority under Section 507(a) of the Bankruptcy Code, other than Priority Tax Claims and Administrative Expense Claims.

"Professionals" shall mean (i) the Trustee, or (ii) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330, 331 and 503 of the Bankruptcy Code.

"Professional Administrative Expense Claim Bar Date" shall have the meaning attributed to this phrase in Section 5.2(d)(ii) of the Plan.  This phrase expressly excludes any and all Claims

of Professionals or Committee members to which the DIP Professional and Committee Bar Date applies.

"Restitution" shall mean any Cash payments to be made by Wright for the benefit of Victims as ordered by any state or federal court and as required by any Governmental Unit.

"Schedules" shall mean the schedules of assets and liabilities filed by the Debtors under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules may have been or may be supplemented or amended from time to time.

"Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

"Trustee" shall mean Gil A. Miller in his capacity as Chapter 11 Trustee of the Debtors.

"Trustee Professionals" shall mean the Trustee and Professionals employed by the Trustee pursuant to an order of the Bankruptcy Court.

"Trustee Report" shall mean the First Report of Gil A. Miller, Chapter 11 Trustee, Pursuant to 11 U.S.C. § 1106(a)(3) and (a)(4)(A) [Bankruptcy Case Docket No. 200].

"Unfiled Victim Claim" shall mean a Victim Claim for which no Victim Proof of Claim has been filed in the Bankruptcy Case prior to the Bar Date or otherwise.

"Victim Funds" shall mean Restitution, if any, plus all Cash of the Consolidated Estate, less Cash necessary to fund and/or pay: (i) costs of administration of the Consolidated Estate, including any funds necessary to fund settlement agreements unrelated to Victim Claims; (ii) Allowed Administrative Expenses Claims; (iii) Allowed Priority Tax Claims; (iv) Allowed Secured Claims; (v) Allowed Priority Unsecured Claims; (vi) Allowed General Unsecured Claim; (vii) the Disputed Claim Reserve; and (viii) any Small Claim Reserve.

"Victim" shall mean a Waterford Investor who did not receive a return of its Principal Investment, whether in whole or in part, prior to the Petition Date or otherwise.

"Victim Claim" shall mean the unsecured non-priority Claim of a Victim, limited to the amount of the unpaid Principal Investment.

"Victim Proof of Claim" shall mean a proof of Claim filed by a Victim in the Bankruptcy Case and docketed on either the WF Claim Docket or the WLF Claim Docket.

"WF" shall mean Wrightway Investments, LLC and Waterford Funding, LLC, Utah limited liability companies.

"WF Claim Docket" shall mean the docket showing proofs of Claim filed in the Bankruptcy Case under Case No. 09-22584.

"WLF" shall mean Waterford Loan Fund, LLC, a Utah limited liability company.

"WLF Claim Docket" shall mean the pre-Consolidation Order docket, showing proofs of claims filed in the Bankruptcy Case under Case No. 09-22583.

"Waterford Enterprise" shall mean Wright, the Debtors, all subsidiaries of the Debtors, all affiliates of the Debtors, and/or any entity in which Wright or any of the Debtors held a Membership Interest.

"Waterford Investor" shall mean a Person who placed Cash with the Debtors or Wright pursuant Waterford Notes.

"Waterford Winning Investor" shall mean a Person who placed Cash with the Debtors or Wright and who received consideration greater than its Principal Investment.

"Waterford Notes" shall mean promissory notes issued to Waterford Investors by Wright and/or one or more of the Debtors.

"Wright" shall mean Travis L. Wright, an individual.


# ARTICLE II

# CLASSIFICATION OF CLAIMS

## 2.1    Classified Claims.

As a result of the Consolidation Orders, the Debtors and their respective estates have been consolidated as of the Petition Date.  Thus, any and all Allowed Claims, to the extent claimed against any one of the Debtors, are deemed to be made against the Consolidated Estate and the Plan does not provide for separate classification of Claims against any one Debtor, to the extent such Claims exist.  Rather, all holders of Allowed Claims are to be paid from the assets of the Consolidated Estate as provided for in this Plan.

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan must classify, with certain exceptions discussed below, all Claims, and such classification is for all purposes relating to the Plan, including voting on, confirmation of, and distributions pursuant to the Plan.  A Claim is classified in a particular Class only to the extent that: (a) the Claim falls with the description of that Class; and (b) it has not already been paid, released or otherwise satisfied before the Effective Date.  In this case, Claims other than certain unclassified Claims discussed below, are classified as follows:

Class 1 - <u>Secured Claims</u>.  Class 1 consists of all Allowed Secured Claims, if any.

Class 2 - <u>Priority Unsecured Claims</u>.  Class 2 consists of all Allowed Priority Unsecured Claims, if any.

Class 3 - <u>General Unsecured Claims</u>.  Class 3 consists of all Allowed General Unsecured Claims, if any.

Class 4 - <u>Victim Claims</u>.  Class 4 consists of all Allowed Victim Claims.

Class 5 - <u>Membership Interests</u>.  Class 5 consists of all Membership Interests in the Debtors, if any.

Treatment of each of these Classes of Claims under the Plan is set forth in Article IV below.

### 2.2    **Unclassified Claims.**

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not placed into Classes that are entitled to vote to accept or reject this Plan; instead, such Claims are "unclassified," and the holders of such Claims do not vote on the Plan because they are entitled to specific treatment under the Bankruptcy Code.  As such, the Trustee has not placed these Claims in a Class.  The respective treatment of these Claims under the Plan is set forth in Article V below.

# ARTICLE III

## VOTING ON, ACCEPTANCE, AND REJECTION OF THE PLAN

### 3.1    **Voting Classes and Acceptance of Plan.**

Each holder of an Allowed Claim in Classes 3 and 4 of the Plan is entitled to vote to accept or reject the Plan as a member of an impaired Class which will retain or receive property under the Plan.  A Person holding an Allowed Claim in more than one Class is entitled to vote in each Class.  Persons who are holders of Allowed Claims in voting Classes 3 and 4 should vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

### 3.2    **Non-Voting Classes.**

Classes 1 and 2 are not impaired under the Plan and, therefore, under Section 1126(f) of the Bankruptcy Code, holders of Allowed Claims in these Classes, if any, are deemed to accept the Plan.  Accordingly, the Trustee will not solicit votes on the Plan from the holders of Allowed Claims in Classes 1 and 2, if any.

Holders of Membership Interests, if any, in Class 5 are not entitled to receive or retain any property under the Plan and, therefore, under Section 1126(g) of the Bankruptcy Code, holders of Membership Interests in Class 5 are deemed to have rejected the Plan. Accordingly, the Trustee will not solicit votes on the Plan from the holders of Membership Interests in this Class.

### 3.3     Voting Rights of Holders of Disputed Claims.

Pursuant to Bankruptcy Rule 3018(a), a Disputed Claim will not be counted for purposes of voting on the Plan to the extent it is Disputed, unless the Court enters an order temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes is without prejudice to the holder's right to seek to have its Disputed Claim be determined to be an Allowed Claim for purposes of distribution under the Plan.

### 3.4     Nonconsensual Confirmation.

If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Section 1126(c) or (d) of the Bankruptcy Code, as applicable, or if any impaired Class is deemed to have rejected the Plan, the Trustee reserves the right (a) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, (b) to amend the Plan in accordance with Section 11.7 hereof, to the extent necessary to obtain entry of a Confirmation Order, and/or (c) to convert the Chapter 11 Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS

### 4.1     Class 1 - Secured Claims.

(a)     Classification:  Class 1 consists of all Allowed Secured Claims.

(b)     Treatment:  Each holder of an Allowed Secured Claim will receive, at the option of the Trustee, one of the following (unless otherwise agreed by the holder of an Allowed Secured Claim): (i) Cash in an amount equal to such Allowed Secured Claim, including any interest thereon required to be paid pursuant to Section 506(b) of the Bankruptcy Code, on the later of the Initial Distribution Date and five (5) Business Days of the date such Secured Claim becomes an Allowed Secured Claim, or (ii) return of the Collateral securing its Allowed Secured Claim, or the proceeds of such Collateral, in full and complete satisfaction thereof on the later of the Initial Distribution Date and the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable.

(c)     Voting:  Claims in this Class are unimpaired and, therefore, holders of such Claims are presumed to vote in favor of the Plan. Accordingly, their vote for or against the Plan will not be solicited by the Trustee.

10

**4.2**  **Class 2 - Priority Unsecured Claims**.

(a)  <u>Classification</u>:  Class 2 consists of all Allowed Priority Unsecured Claims.

(b)  <u>Treatment</u>:  Unless the Trustee and the holder of such Claim agree to different treatment, each holder of an Allowed Priority Unsecured Claim, if any, will be paid in full on the later of (i) the Effective Date, or (ii) within five (5) Business Days of the date that the holder's Priority Unsecured Claim is an Allowed Claim.

(c)  <u>Voting</u>:  Claims in this Class are unimpaired and, therefore, holders of such Claims are presumed to vote in favor of the Plan.  Accordingly, their vote for or against the Plan will not be solicited by the Trustee.

**4.3**  **Class 3 - General Unsecured Claims**.

(a)  <u>Classification</u>:  Class 3 consists of all Allowed General Unsecured Claims.

(b)  <u>Treatment</u>:  Unless the Trustee and the holder of such Claim agree to different treatment, each holder of an Allowed General Unsecured Claim, if any, will be paid 10% of the Allowed Claim on the later of (i) the Effective Date, or (ii) within five (5) Business Days of the date that the holder's General Unsecured Claim is an Allowed Claim.

(c)  <u>Voting</u>:  Claims in this Class are impaired and, therefore, holders of such Claims will be solicited by the Trustee to vote for the Plan.

**4.4**  **Class 4 - Victim Claims**.

(a)  <u>Classification</u>:  Class 4 consists of all Allowed Victim Claims.

(b)  <u>Treatment</u>: Each holder of an Allowed Victim Claim shall be paid from the Victim Funds as follows:  (i) on the Initial Distribution Date, such holders will receive a distribution of available Victim Funds pursuant to a rising tide method of distribution under which the Trustee will apply a consistent formula to calculate distributions, giving distribution preference to those holders of Allowed Victim Claims who received little or no return of their Principal Investment over other holders of Allowed Victim Claims who received larger distributions of their Principal Investment prior to the Petition Date; and (ii) any subsequent distribution on account of Allowed Victim Claims will be made, in the Trustee's sole discretion, when appropriate using the same rising tide method of distribution; <u>providedhowever</u>, that in the event that Victim Funds exceed $1 million, the Trustee shall make a distribution as provided for in Section 7.5 of this Plan.

(c)  <u>Effect of Restitution</u>: In the event that Restitution is ordered, the following alternative scenarios will apply that will affect the treatment of Allowed Victim Claims as set forth herein:

(i)  In the event that Restitution is assigned to the Consolidated Estate, such Restitution will be Victim Funds for distribution to Victims holding Allowed Victim Claims as provided for in the Plan.  In the event that future Restitution exists at the time of the

11

entry of a Final Decree in the Bankruptcy Case, the Trustee shall assign the Restitution back to the relevant Governmental Unit for distribution to Victims outside of the Plan.

(ii)    In the event that Restitution is not assigned to the Consolidated Estate but rather is distributed to Victims by the relevant Governmental Unit, the Trustee shall treat any such Governmental Unit distribution as a distribution to the Victim outside of the Plan and such distribution shall be applied by the Trustee in calculating the distribution made to the holder of the Allowed Victim Claim.

(d)    <u>Voting</u>:  Claims in this Class are impaired and, therefore, holders of such Claims will be solicited by the Trustee to vote for the Plan.

**4.5    <u>Class 5 - Membership Interests</u>.**

(a)    <u>Classification</u>:  Class 5 consists of any and all Membership Interests.

(b)    <u>Treatment</u>:  Any and all Membership Interests, to the extent that any such Membership Interests exist, shall be cancelled on the Effective Date, and holders of Membership Interests, if any, will neither receive nor retain any property under the Plan.

(c)    <u>Voting</u>: Membership Interests, if any, are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan.  Accordingly, the Trustee will not solicit votes on the Plan from the holders of Membership Interests, if any.

# ARTICLE V

## TREATMENT OF UNCLASSIFIED CLAIMS - ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

**5.1    <u>Non-Classification</u>.**

As discussed in Section 2.2 above, under Section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not classified for the purposes of voting on, or receiving distributions under, the Plan.  The holders of all such Claims do not vote on the Plan and are instead treated separately in accordance with applicable law as set forth in this Article V.

**5.2    <u>Administrative Expense Claims</u>.**

(a)    <u>General</u>.  Except as otherwise agreed to by the Trustee and the holder of an Allowed Administrative Expense Claim, and except as specifically provided for in subsections (c) and (d) below, each such holder shall be paid in full in Cash on the later of: (i) the Effective Date, or (ii) within five (5) Business Days of the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

(b)     U.S. Trustee's Fees.  The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 28 U.S.C. § 1930 on or before the Effective Date. Any dispute related to the amount of the fees shall be resolved by the Court at the Confirmation Hearing.

(c)     Administrative Expense Bar Date and Procedures.  Other than the Claims of Professionals which are provided for below, the Trustee is not aware of any Administrative Expense Claims other than the Claims scheduled on Disclosure Statement Exhibit C.  But, to the extent Administrative Expense Claims are alleged by Persons other than Professionals, requests for payment of such Claims must be filed and served on the Trustee and the United States Trustee no later than thirty (30) days after the Effective Date, which shall be the "Administrative Expense Claim Bar Date."  Any holder of an Administrative Expense Claim to which the Administrative Expense Claim Bar Date applies who fails to file a request seeking to have its Claim allowed on or before said Bar Date shall be forever barred from seeking the allowance of its Administrative Expense Claim or any other Claim, and the Trustee, the Debtors and the Consolidated Estate shall be discharged of any obligation on such Claim or any other Claim related to the Administrative Expense Claim.

(d)     Professionals and Committee Members—Bar Dates and Procedures.

(i)     Debtor in Possession Professionals, Committee Professionals and Committee Members.  Any and all Claims of Debtor in Possession Professionals, Committee Professionals or any Committee Member that were not asserted prior to the DIP Professional and Committee Bar Date are time-barred (including Claims that were filed prior to this Bar Date and were withdrawn prior to any disposition thereon) and, to the extent that such Claims were or are asserted after the DIP Professional and Committee Bar Date, they are disallowed in their entirety. All Committee Members who asserted timely Claims, have been paid in full.  To the extent that any Debtor in Possession Professional or Committee Professional filed a final fee application prior to the DIP Professional and Committee Bar Date, such Professionals shall be paid any Allowed Administrative Expense Claim that they hold under Section 5.2(a) above, unless the Professionals' Allowed Administrative Expense Claim has been Allowed and paid in full prior to the entry of the Confirmation Order.

(ii)     Trustee Professionals.  Notwithstanding anything contained in the Fee Procedures Order, all Trustee Professionals requesting compensation or reimbursement of expenses under Sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code for services rendered before the Effective Date shall file and serve on the Trustee and the United States Trustee an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date, which shall be the "Professional Administrative Expense Claim Bar Date."  Any Trustee Professional to which this Professional Administrative Expense Claim Bar Date applies who fails to file a request to have its Claim allowed on or before said Bar Date shall be forever barred from seeking the allowance of its Administrative Expense Claim or any other Claim, and the Trustee, the Debtors and the Consolidated Estate shall be discharged of any obligation on such Claim or any other Claim related to the Trustee Professional's Administrative Expense Claim.

13

**5.3**    **Priority Tax Claims.**

At the sole election of the Trustee, the holder of  Allowed Priority Tax Claims shall be paid either (i) upon such terms as may be agreed to between the Trustee and such holder of an Allowed Priority Tax Claim, (ii) in full in Cash on the later of the Effective Date or within five (5) Business Days of the date that such Allowed Priority Tax Claim becomes and Allowed Priority Tax Claim, or (iii) in deferred Cash payments to be agreed upon by the Trustee and the holder of the Allowed Priority Tax Claim, not to exceed a period of five (5) years after the Petition Date.


**ARTICLE VI**

**IMPLEMENTATION OF THE PLAN**

**6.1**    **General.**

The Plan will be implemented and consummated through means contemplated by Section 1123(a)(5)(A), and (D), and Section 1123(b) of the Bankruptcy Code, including but not limited by:

(a)    Retention of property of the Consolidated Estate for liquidation;

(b)    Where appropriate, the sale of property of the Consolidated Estate, and the distribution of net sale proceeds among the holders of Allowed Claims as provided for herein;

(c)    Where appropriate, the distribution of all or any part of the property of the Consolidated Estate among those having an interest in such property;

(d)    Compromising certain Claims; and

(e)    Retention and enforcement by the Trustee of all Claims and Causes of Action.

**6.2**    **Administration of the Consolidated Estate by Trustee.**

The Trustee shall administer the Consolidated Estate after confirmation of the Plan, including but not limited to by holding all rights, powers, and duties of a trustee under Chapter 11 of the Bankruptcy Code, as well as those rights, powers and duties afforded by this Plan and the Confirmation Order.  Unless expressly stated otherwise herein, the Trustee is the representative of the Consolidated Estate for all purposes after the entry of the Confirmation Order.

**6.3**    **Retention of Property of Consolidated Estate.**

At all relevant times, including after entry of the Confirmation Order and the occurrence of the Effective Date, the Trustee shall retain property of the Consolidated Estate including, but not limited to the retention of all Claims and Causes of Action, including as set forth in Section 6.7 below.

**6.4**    **Liquidation of Property and Distribution of Net Proceeds.**

At all times relevant, including after the entry of the Confirmation Order and the occurrence of the Effective Date, the Trustee shall continue his orderly liquidation of property of the Consolidated Estate consistent with the terms of the Plan.  The Trustee shall continue to reduce all property of the Consolidated Estate to Cash, and distribute such Cash pursuant to the provisions of this Plan.  The Trustee shall use such Cash, less costs of administration, to pay the holders of Allowed Claims as provided for in the Plan and Confirmation Order until such Cash is exhausted.

**6.5**    **Unfiled Victim Claim Compromise.**

The Trustee, on the one hand, agrees to recognize each Unfiled Victim Claim as an Allowed Victim Claim in an amount not to exceed the amount set forth for such Claim on Disclosure Statement Exhibit G-2 for purposes of voting on and distribution under the Plan. Each holder of an Unfiled Victim Claim, on the other hand, agrees that: (a) it has an Allowed Victim Claim in an amount that does not exceed the amount of its Claim set forth on Disclosure Statement Exhibit G-2; (b) it is not entitled to an Allowed Victim Claim in addition to or in an amount in excess of the amount of its Claim set forth on Disclosure Statement Exhibit G-2 and any such additional Claim in excess of the amount of its Claim set forth on Disclosure Statement Exhibit G-2 is a Disallowed Claim; (c) upon entry of the Confirmation Order, any and all Claims that it might have against the Consolidated Estate in excess of or in addition to its Claim scheduled on Disclosure Statement Exhibit G-2 are waived, released, discharged and disallowed in their entirety, regardless of whether the Victim voted to accept or reject the Plan; and (d) it is enjoined and barred from bringing any motion, suit, proceeding, case or any other action to request recognition of or to assert a Claim in an amount in excess of that scheduled on Disclosure Statement Exhibit G-2.

**6.6**    **Restitution.**

In the event that Restitution is ordered, the following alternative scenarios will apply:

(a)    In the event that Restitution is assigned to the Consolidated Estate, such Restitution will be Victim Funds for distribution to Victims as provided for in the Plan.  In the event that future Restitution exists at the time of the entry of a Final Decree in the Bankruptcy Case, the Trustee shall assign the Restitution back to the relevant Governmental Unit for distribution to Victims outside of the Plan.

(b)    In the event that Restitution is not assigned to the Consolidated Estate but rather is distributed to Victims by the relevant Governmental Unit, the Trustee shall treat any such Governmental Unit distribution as a distribution to the Victim outside of the Plan and such distribution shall be applied by the Trustee in calculating the distribution made to the holder of the Allowed Victim Claim under Section 4.4(b) above.

### 6.7    Preservation of Causes of Action and Defenses.

Except to the extent rights, Claims, Causes of Action, defenses, and counterclaims are expressly and specifically released in connection with the Plan or in any settlement agreement approved by the Bankruptcy Court during the Bankruptcy Case, (a) any and all rights, Claims, Causes of Action, defenses, and counterclaims accruing to or assertable by the Debtors or the Trustee on behalf of the Consolidated Estate, shall remain assets of the Consolidated Estate and may be asserted by the Trustee on behalf of the Consolidated Estate after the Effective Date, and (b) the Trustee does not waive, relinquish or abandon (nor shall he be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Consolidated Estate or is assertable by the Consolidated Estate: (i) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Schedules, the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (ii) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Trustee, and (iii) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense or counterclaim filed a proof of Claim in the Bankruptcy Case, filed a notice of appearance or any other pleading or notice in the Bankruptcy Case, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, laches or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, Cause of Action, defense, or counterclaim, in the Schedules, the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that the Trustee, the Debtors and/or the Consolidated Estate has or may have as of the Confirmation Date.  The Trustee may commence, prosecute, defend against, recover on account of, and settle all rights, Claims, Causes of Action, defenses, and counterclaims in his sole discretion in accordance with the best interests, and for the benefit of, the post-Effective Date Consolidated Estate.

### 6.8    Non-Discharge of Debtors and Injunction.

**THIS PLAN PROVIDES FOR AN INJUNCTION OF CERTAIN ACTIONS AND CLAIMS AGAINST THE DEBTORS.  HOLDERS OF CLAIMS, RIGHTS, CAUSES OF ACTION OR INTERESTS AGAINST THE DEBTORS MAY NOT PURSUE (a) PROPERTY OF THE CONSOLIDATED ESTATE OTHER THAN THROUGH SEEKING ALLOWANCE OF ITS CLAIM, IF ANY, FOR DISTRIBUTION IN ACCORDANCE WITH THIS PLAN; OR (b) THE TRUSTEE AND HIS AGENTS.**

PURSUANT TO SECTION 1141(d)(3) OF THE BANKRUPTCY CODE, THE CONFIRMATION ORDER SHALL NOT DISCHARGE CLAIMS AGAINST THE DEBTORS.  HOWEVER, NO HOLDER OF A CLAIM MAY RECEIVE ANY PAYMENT FROM OR SEEK RECOURSE AGAINST ANY ASSETS THAT ARE PROPERTY OF THE CONSOLIDATED ESTATE, EXCEPT FOR THOSE ASSETS REQUIRED TO BE DISTRIBUTED TO SUCH HOLDER AS EXPRESSLY PROVIDED FOR IN THE PLAN.

AS OF THE EFFECTIVE DATE, ALL PERSONS ARE PRECLUDED FROM ASSERTING AGAINST ANY PROPERTY OF THE ESTATE AND ASSETS THAT ARE DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN ANY CLAIMS, RIGHTS, CAUSES OF ACTION, LIABILITIES OR INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, OTHER THAN AS EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, REGARDLESS OF THE FILING, LACK OF FILING, ALLOWANCE OR DISALLOWANCE OF SUCH CLAIM AND REGARDLESS OF WHETHER SUCH PERSON HAS VOTED TO ACCEPT THE PLAN.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A DEBT, RIGHT, CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY OR INTEREST AGAINST OR IN THE DEBTORS THAT WOULD BE DISCHARGED UPON CONFIRMATION OF THE PLAN ON THE EFFECTIVE DATE BUT FOR THE PROVISIONS OF SECTION 1141(d)(3) OF THE BANKRUPTCY CODE SHALL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH DEBT, RIGHT, CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY OR INTEREST: (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING ON ACCOUNT OF SUCH DEBT, RIGHT, CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY OR INTEREST AGAINST ASSETS OR PROCEEDS THEREOF THAT PROPERTY OF THE CONSOLIDATED ESTATE AND WHICH ARE TO BE DISTRIBUTED UNDER THE PLAN, OTHER THAN TO ENFORCE ANY RIGHT TO A DISTRIBUTION WITH RESPECT TO SUCH ASSETS OR THE PROCEEDS THEREOF AS PROVIDED UNDER THE PLAN; (ii) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY ASSTS TO BE DISTRIBUTED TO CREDITORS UNDER THE PLAN, OTHER THAN AS PERMITTED UNDER SUBPARAGRAPH (i) ABOVE; and (iii) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY ASSETS TO BE DISTRIBUTED UNDER THE PLAN, OTHER THAN AS PERMITTED BY THE PLAN, PROVIDED THAT NOTHING CONTAINED HEREIN SHALL LIMIT THE RIGHTS OF ANY DISTRIBUTEE UNDER THE PLAN FROM TAKING ANY ACTIONS IN RESPECT OF PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED TO IT UNDER THE PLAN.

## ARTICLE VII

## CLAIM OBJECTIONS AND DISTRIBUTION OF CONSIDERATION

### 7.1    Objections to Claims.

Unless otherwise extended by an order entered by the Bankruptcy Court, objections to the allowance of Claims shall be filed and served upon the Persons asserting such Claims as follows: (a) for known Priority Tax Claims, Secured Claims, Priority Unsecured Claims, General Unsecured Claims and Victim Claims scheduled on <u>Disclosure Statement Exhibits D-F</u>, no later than ninety (90) days after the Effective Date; (b) for any and all Claims to which the Administrative Claims Bar Date, the Professional Administrative Claims Bar Date or the Contract Rejection Claims Bar Date applies, thirty (30) days after the expiration of the respective Bar Date; and (c) for any Claim that is not scheduled on <u>Disclosure Statement Exhibits D-F</u> or to which the Administrative Claims Bar Date, the Professional Administrative Claims Bar Date or the Contract Rejection Claims Bar Date applies, thirty (30) days after the Trustee is provided notice of such Claim.

The Trustee shall (i) be responsible for filing objections to any and all Claims that are Disputed Claims asserted against the Consolidated Estate; (ii) have authority to settle and compromise any objection to a Disputed Claim, if appropriate, without further order of the Bankruptcy Court, provided that the total Cash settlement amount does not exceed $100,000; and (iii) he may assert any and all Claims, rights of action, Causes of Action, counterclaims and defenses held by the Consolidated Estate after the Effective Date as they existed prior to the Effective Date. Distributions made under the Plan to the holder of a Claim shall not be considered to be a waiver or release by the Trustee and the Consolidated Estate of any Claims against the holder of the Claim.

### 7.2    Disputed Claims.

On the Effective Date or thereafter, no distributions shall be made unless a Claim is an Allowed Claim on the Effective Date. Except as may otherwise be agreed with respect to any Disputed Claim, no payment or distribution will thereafter be made with respect to all or any portion of a Disputed Claim until such Claim is an Allowed Claim. Payments and distributions to each holder of a Disputed Claim (to the extent that such Claim, or any portion thereof, ultimately becomes an Allowed Claim) must be made in accordance with the Plan.

### 7.3    Estimation of Claims.

The Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, to establish the amount of the Claim for voting purposes, the amount of the Disputed Cash Reserve, or during any litigation concerning or an objection to such Claim. The Trustee shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim. If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude the Trustee from pursuing any additional proceedings to object to any ultimate payment of such Claim. If the Bankruptcy Court

18

determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan.  All such proceedings are cumulative and not exclusive remedies.

**7.4**     **Disputed Claims Reserve.**

(a)     <u>Establishment</u>.  The Trustee shall hold up to 25% of the total Cash for the Initial Cash Distribution to holders of Allowed Victim Claims in reserve for potential distribution to those Disputed Victim Claims that may become Allowed Victim Claims after the date of the Initial Cash Distribution (the "<u>Disputed Cash Reserve</u>"), depending on the amount of Disputed Victim Claims as of the time of the Initial Cash Distribution.  In any distributions made by the Trustee after the Initial Cash Distribution pursuant to Section 7.5 hereof, the Trustee shall maintain a Disputed Cash Reserve in an amount which, in his discretion, is sufficient to pay any Disputed Victim Claims that may still exist, taking into account Cash on deposit in the Disputed Cash Reserve and the amount of Disputed Victim Claims still in question at the time of said distribution.  In the event that all Disputed Victim Claims have been resolved by Final Order at the time of any distribution subsequent to the Initial Cash Distribution, the Trustee shall not be required to maintain a Disputed Cash Reserve.

(b)     <u>Distribution Upon Allowance of Disputed Claim</u>.  Within five (5) Business Days of a Disputed Victim Claim becoming an Allowed Victim Claim, the holder of such Claim shall be paid in accordance with the Plan from the Disputed Claims Reserve.  The amount of Cash released from the Disputed Claims Reserve to make such a distribution shall be calculated so that the holder of the newly Allowed Victim Claim receives a distribution equal to the total percentage distributions made prior to the date that its Claim was Allowed to the holders of other Allowed Claims in the same Class.  No holder of a Disputed Victim Claim shall have any right to interest on such Disputed Victim Claim or fees and costs related to such Disputed Victim  Claims.

(c)     <u>Release of Cash from Disputed Claims Reserve</u>.  If a Disputed Victim Claim, or any portion thereof, is a Disallowed Victim Claim, the Cash in the Disputed Claims Reserve allocated for such Disputed Victim Claim shall be released from the Disputed Claims Reserve.   If a Disputed Victim Claim, or any portion thereof becomes an Allowed Victim Claim in an amount that is less than the Cash held in the Disputed Claims Reserve for such Claim, the excess Cash related to such Claim shall be released from the Disputed Claims Reserve.

**7.5**     **Method of Distributions Under the Plan.**

(a)     <u>General</u>.  After the Initial Distribution Date, the Trustee, in his sole discretion, may make one or more additional distributions if he determines, in his sole discretion, that sufficient funds exist to warrant such additional distributions.  If, however, the Victim Funds exceed $1,000,000, the Trustee shall make a distribution to holders of Allowed Victims Claims within thirty (30) days of the Victim Funds meeting such threshold amount.

(b)     <u>Mailing</u>.  All distributions under the Plan to be made by the Trustee to the holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the respective addresses of such holders as listed on the Distribution Record Date (i) on the respective proofs of

19

Claim by such holders, including amendments thereto, (ii) on any written notices of address changes delivered to the Trustee after the date of the filing of any applicable proof of Claim, or (iii) at the addresses reflected on the Schedules if no proof of Claim is filed and the Trustee has not received a written notice of change of address.

(c)     Form of Distributions.  Any payment of Cash made by the Trustee pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Trustee; provided, however, that after the occurrence of the Effective Date, the Trustee is not obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10.00); provided, further, that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if the payment to such holder was less than or equal to ten dollars ($10.00) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars ($10.00) is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.  To the extent that a final distribution would require a distribution of ten dollars ($10.00) or less to a holder of an Allowed Claim, such amount shall be deemed forfeited, and shall be redistributed to holders of Allowed Claims who are to receive a final distribution in excess of ten dollars ($10.00) on account of their Allowed Claim.  If, in the sole discretion of the Trustee, excess Cash exists as of the time of a final distribution that is so de minimis in amount that it cannot be reasonable redistributed to the holders of Allowed Claims, the Trustee may deposit such Cash in the unclaimed funds account of the Bankruptcy Court.

(d)     Distributions to be on Business Days/Timeliness.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after the Effective Date and, in any event, within thirty (30) days after the Effective Date.

(e)     Distributions to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the WF Claim Docket and the WLF Claim Docket shall be closed.  The Trustee shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

(f)     Compliance with Tax Requirements.  In connection with the Plan, to the extent applicable, the Trustee shall comply with all withholding and reporting requirements imposed on it by a Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**7.6     Unclaimed Funds.**

If (a) at the time a distribution to holders of Allowed Claims is to be made under this Plan, the Trustee is unable to deliver the portion of such distribution due to a holder of an Allowed Claim, (b) any amount paid to the holder of an Allowed Claim is returned as undeliverable and the Trustee is unable, with reasonable effort, to ascertain a correct address for

20

the holder entitled thereto within thirty (30) days of its return, or (c) any check distributed in payment of an Allowed Claim is neither returned nor negotiated within six (6) months of the date distributed, in every such case, the Allowed Claim shall be deemed reduced to zero in amount and the holder thereof shall have no further right to payment against or distribution from the Debtors, the Trustee or the Consolidated Estate in any way.  The Cash that, but for this section, would have been payable to the holders of such Allowed Claims shall, to the extent applicable, revert to the Consolidated Estate and be available for application or distribution in accordance with the terms of the Plan.  In regard to locating holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned, the Trustee shall be required to take no more steps other than to compare the returned mail against addresses held for the holder of the Claim through filed documents or correspondence and general internet search for an alternative address.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1**      **Executory Contracts and Unexpired Leases.**

Although the Trustee is not aware of any executory contracts or unexpired leases to which the Debtors are a party, any such executory contracts or unexpired leases shall be deemed rejected as of the Effective Date.  Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date of the Plan.

**8.2**      **Rejection Damage Claims And Contract Rejection Claim Bar Date.**

If the rejection of an executory contract or unexpired lease by the Debtors pursuant to this Article VIII results in a Claim for damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Consolidated Estate or their respective properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served on the Trustee on or before thirty (30) days following the Confirmation Date, which shall be the "Contract Rejection Claim Bar Date."  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of Claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan.  The Trustee shall have the right to object to any rejection damage Claims.

21

# ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**9.1    <u>Conditions Precedent to Effectiveness</u>.**

The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived:

(a)    The Confirmation Order, in form and substance reasonably acceptable to the Trustee, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)    All actions, other documents and agreements necessary to implement the Plan, if any, shall have been executed, delivered, and, if necessary, properly recorded, and shall have become effective; and

(c)    The Consolidated Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date and the Initial Distribution Date.

**9.2    <u>Waiver of Conditions</u>.**

The Trustee in his sole discretion may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 9.1 above, except that the Trustee may not waive the condition that the Consolidated Estate will have sufficient Cash to meet all payment and funding obligations under the Plan on the Effective Date and the Initial Distribution Date.

# ARTICLE X

## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of and related to the Bankruptcy Case, the assets and liabilities of the Consolidated Estate existing both prior to and after entry of the Consolidation Order, and the Plan to the fullest extent permitted by law, including, but not limited to:

(a)    Allowing, disallowing, determining, liquidating, classifying, estimating or establishing the priority or secured or unsecured status of any Claim not otherwise allowed under the Plan, including resolving any request for payment of any Administrative Expense Claim, resolving any objection to the allowance or priority of Claims, and resolving any dispute as to the subordination of any Claim;

22

(b)    Approving compromises and settlements under Bankruptcy Rule 9019 to the extent required under or included in the Plan;

(c)    Hearing and determining any and all Claims, Causes of Action or rights that have been or may be asserted or commenced by the Trustee;

(d)    Hearing and determining all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of Trustee Professionals shall be made in the ordinary course of business and shall not be subject to approval by the Bankruptcy Court;

(e)    Hearing and determining any and all adversary proceedings, motions, applications, requests for disgorgement and contested or litigated matters arising out of, arising under or related to the Bankruptcy Case;

(f)    Effectuating performance of and payment under the provisions of any settlement agreement entered into by the Trustee on behalf of the Consolidated Estate and payment under any Final Order and judgment obtained in any Causes of Action or related to any Claims or Causes of Action asserted by the Trustee against any Person;

(g)    Entering such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(h)    Hearing and determining all matters and disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Disclosure Statement, the Plan and the Confirmation Order, including but not limited to disputes arising under agreements, documents or instruments executed in connection with the Plan;

(i)    Modifying the Plan and/or any documents executed in conjunction with the Plan at the request of the Trustee and as provided by applicable law, including without limitation to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(j)    Issuing injunctions, entering and implementing other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Person with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(k)    Entering and implementing orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(l)    Enforcing all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

23

(m)     Determining any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein;

(n)     Hearing and determining all matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     Hearing and determining any and all matters relating to the administration of the Consolidated Estate by the Trustee either prior to or after the Effective Date; and

(p)     Entering a Final Decree and closing the Bankruptcy Case.


## ARTICLE XI

## MISCELLANEOUS

### 11.1     Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 11.2     Notice of Effective Date.

As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the Trustee shall file and serve on each holder of an alleged Claim a written notice of the occurrence of the Effective Date.

### 11.3     Limitation of Liability.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Trustee, his employees, officers, directors, agents or representatives, any Trustee Professionals, and the Consolidated Estate, shall not have or incur any liability to any Person for any authorized act taken or authorized omission made in good faith in connection with or related to the Bankruptcy Case or the Consolidated Estate, including the objections to or estimations of Claims, disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan or otherwise.

Consistent with Section 1125(e) of the Bankruptcy Code, to the extent acceptances or rejections of the Plan have been solicited, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Trustee and Trustee Professionals are not liable on account of such solicitation or participation or for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

24

### 11.4    Execution of Documents and Corporate Action.

The Trustee may execute such documents or take such other action as is necessary to effectuate the transactions provided for in this Plan, to wind-down or dissolve any of the Debtors or any entities in the Waterford Enterprise.

### 11.5    Default of Plan.

In the event of any default of the provisions of this Plan, a creditor or party in interest aggrieved by such default may provide written notice to the Trustee. The written notice of default must describe with specificity the nature of the default alleged and the steps required to cure such default. The Trustee shall have thirty (30) days after receipt of notice of default to cure such default. If the Trustee does not cure such default within thirty (30) days after receipt of a notice of default, then a creditor or party in interest aggrieved by such default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan. The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, and if a default occurred, whether such default has been cured. Upon finding a material default, the Bankruptcy Court may issue such orders as may be appropriate, including an order compelling compliance with the pertinent provisions of the Plan.

### 11.6    Setoffs and No Waiver.

Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Trustee and the Consolidated Estate of any rights of setoff the Consolidated Estate may have against any Person. The failure of the Debtors or any other Person to object to any Claim for the purposes of voting shall not be deemed a waiver of the Trustee's right to object to or examine such Claim, in whole or in part.

### 11.7    Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Trustee at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Trustee shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Trustee may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any Exhibit attached to the Disclosure Statement or the Plan.

### 11.8    Revocation or Withdrawal of the Plan.

The Trustee reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of liquidation.  If the Trustee revokes or withdraws the Plan, or if confirmation or consummation does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the allowing, fixing or limiting to an amount certain any Claim or Class of Claims, rejection or assumption of any executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute a waiver or release of any Claims by or against the Consolidated Estate, the Debtors or the Consolidated Estate, (ii) prejudice in any manner the rights of the Debtors or Trustee in any further proceedings involving the Debtors or the Consolidated Estate, or (iii) constitute an admission of any sort by the Debtors or the Trustee.

### 11.9    Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Trustee, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 11.10   Exhibits.

Any Disclosure Statement Exhibits or Exhibits to the Plan not filed herewith will be filed no later than ten (10) days prior to the commencement of the Confirmation Hearing.  Unless otherwise ordered by the Bankruptcy Court, the Exhibits, if any, to the Plan may not be served with the Plan, but rather copies of all such Exhibits may provided upon written request to Trustee's counsel.

### 11.11   Binding Effect.

The Plan and all rights, duties and obligations hereunder shall be binding upon and inure to the benefit of the Debtors, the Trustee and the Consolidated Estate, and any successors and assigns.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**11.12**   **Notices**.

All notices, requests and demands to or upon the Trustee shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by e-mail, when received and confirmed, addressed as follows:

Peggy Hunt
Nathan Seim
Dorsey and Whitney, LLP
136 S. Main St., Suite 1000
Salt Lake City, Utah 84101
hunt.peggy@dorsey.com
seim.nathan@dorsey.com

**11.13**   **Governing Law**.

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

**11.14**   **Post-Confirmation Administration - Fees, Reports, Final Decree**.

On and after the Effective Date, the Trustee shall no longer be required to file monthly operating reports with the United States Trustee.

Until the entry of a Final Decree, the Trustee shall:

(a)   Pay the costs of administering the Consolidated Estates and any post-confirmation fees due pursuant to 28 U.S.C. §1930;

(b)   Unless otherwise ordered, file status reports related to the consummation of the Plan when, in his discretion, such reports would be beneficial to creditors; and

(c)   Once the Consolidated Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Trustee shall file a final report and account of all receipts and disbursements, and serve that report via ECF with notice of said report served on Persons entitled to notice in the Bankruptcy Case.  Any such report shall include a request that the Bankruptcy Court enter a Final Decree in the Bankruptcy Case.

**11.15**   **Headings**.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**11.16  <u>Inconsistency</u>.**

In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

## ARTICLE XII

## REQUEST FOR CONFIRMATION

The Trustee hereby requests that the Court confirm the Plan pursuant to Section 1129 of the Bankruptcy Code.

DATED this 2nd day of August, 2011.

**DORSEY & WHITNEY LLP**

/s/Peggy Hunt
Peggy Hunt
Nathan S. Seim
*Attorneys for Chapter 11 Trustee*

28